## EMPLOYMENT AGREEMENT

Made this 1ST day of April, 2003, between Lighthouse Financial Services, Inc. (the "Company"), a New Hampshire corporation, having its principal place of business located in Lowell, Massachusetts ~~Nashua, New Hampshire~~, and John C. Stone (the "Employee").

### WITNESSETH:

WHEREAS, the Employee has expertise in Lockbox Services;

WHEREAS, the parties acknowledge that the Employee's abilities and services are unique and essential to the prospects of the Company; and

WHEREAS, in light of the foregoing, the Company desires to employ the Employee as its President and the Employee desires to accept such employment.

NOW, THEREFORE, the parties hereto agree as follows:

1. **EMPLOYMENT.** The Company hereby employs the Employee and the Employee hereby accepts employment upon the terms and conditions hereinafter set forth.

2. **TERM.** This Agreement shall commence on the date hereof and shall terminate as of the earlier of:

   (a) 1 year from the date hereof;

   (b) the death or permanent disability of the Employee;

   (c) thirty days after notice is given by the Company to the Employee whether for cause (as defined in Section 1 of the Restricted Stock Purchase Agreement executed by the parties herewith) or without cause; or

   (d) thirty days after notice is given by the Employee to the

Company for good reason (as defined in Section of, said above referenced Restricted Stock Purchase Agreement) or for any other reason.

3. **COMPENSATION.** For all services rendered under this Agreement:

(a) The Company shall pay the Employee a base salary of $144,000.00 per annum in equal semi-monthly installments. Such salary is subject to adjustment on an annual basis by the Board of Directors, based on Employee's performance during the prior year. Salary for the first year may be deferred at the sole discretion of the Board of Directors and must be paid out before the distribution of any profits of the Corporation.

(b) During the term of his employment, the Employee shall be entitled to participate in employee benefit plans or programs of the Company, if any, to the extent that his position, tenure, salary, age, health and other qualifications make him eligible to participate, subject to the rules and regulations applicable thereto. Such additional benefits shall include full medical insurance, and four weeks paid vacation.

(c) The Company will reimburse Employee for all business auto expenses, and other travel and business expenses, reasonably incurred, upon submission of appropriate vouchers or receipts therefor.

4. **DUTIES.** Subject to the direction of the Board of Directors and the Company's officers designated by the Board of Directors, Employee shall perform and discharge well and faithfully the duties which may be assigned to him from time to time by the Company in connection with the conduct of its business.

5. **EXTENT OF SERVICES.** The Employee shall devote his entire time, attention and energies to the business of the Company and shall not during the term of

this Agreement be engaged (whether or not during normal business hours) in any other business or professional activity without prior written approval from the Board of Directors, whether or not such activity is pursued for gain, profit or other pecuniary advantage; but this shall not be construed as preventing the Employee from: (a) investing his personal assets in businesses which do not compete with the Company in such form or manner as will not require any services on the part of the Employee in the operation or the affairs of the companies in which such investments are made and in which his participation is solely that of an investor, (b) purchasing securities in any corporation whose securities are regularly traded provided that such purchase shall not result in his collectively owning beneficially at any time five percent or more of the equity securities of any corporation engaged in a business competitive to that of the Company.

6. **DISCLOSURE OF INFORMATION.** The Employee recognizes and acknowledges that the Company's trade secrets and proprietary information and processes including, but not limited to customer information, as they may exist from time to time, are valuable, special and unique assets of the Company's business, access to and knowledge of which are essential to the performance of the Employee's duties hereunder. The Employee will not, during or after the term of his employment by the Company, in whole or in part, disclose such secrets, information or processes to any person, firm, corporation, association or other entity for any reason or purpose whatsoever, nor shall the Employee make use of any such property for his own purposes or for the benefit of any person, firm, corporation or other entity (except the Company) under any circumstances during or after the term of his employment, provided that after the term of his employment these restrictions shall not apply to such secrets, information

and processes which are then in the public domain (provided that the Employee was not responsible, directly or indirectly, for such secrets, information or processes entering the public domain without the Company's consent). The Employee agrees to hold as the Company's property, all memoranda, books, papers, letters, formulas and other data, and all copies thereof and therefrom, in any way relating to the Company's business and affairs, whether made by him or otherwise coming into his possession, and on termination of his employment, or on demand of the Company, at any time, to deliver the same to the Company.

7. **INVENTIONS.** The Employee hereby sells, transfers and assigns to the Company or to any person, or entity designated by the Company, all of the entire right, title and interest of the Employee in and to all inventions, ideas, disclosures and improvements, whether patented or unpatented, and copyrightable material, made or conceived by the Employee during the term hereof, solely or jointly, or in whole or in part, which (i) relate to methods, apparatus, designs, products, processes or devices sold, leased, used or under construction or development by the Company or any subsidiary or (ii) otherwise relate to or pertain to the business, functions or operations of the Company or any subsidiary, or (iii) arise (wholly or partly) from the efforts of the Employee. The Employee shall communicate promptly and disclose to the Company, in such form as the Company requests, all information, details and data pertaining to the aforementioned inventions, ideas, disclosures and improvements; and, whether during the term hereof or thereafter, the Employee shall execute and deliver to the Company such formal transfers and assignments and such other papers and documents as may be required of the Employee to permit the Company or any person or entity designated by the Company to

file and prosecute the patent applications and, as to copyrightable material, to obtain copyright thereon. Any invention by the Employee within one year following the termination of this Agreement shall be deemed to fall within the provisions of this paragraph unless proved by the Employee to have been first conceived and made following such termination.

8. **COVENANT NOT TO COMPETE**

(a) During the term of employment hereof, the Employee shall not compete, directly or indirectly, with the Company, interfere with, disrupt or attempt to disrupt the relationship, contractual or otherwise, between the Company and any customer, client, supplier, consultant or employee of the Company, including, without limitation, employing or being an investor (representing more than a 5% equity interest) in, or officer, director or consultant to, any person or entity which employs any former key or technical employee whose employment with the Company was terminated after the date which is one year prior to the date of termination of the Employee's employment therewith. An activity competitive with an activity engaged in by the Company shall mean performing services (whether as an employee, officer, consultant, director, partner or sole proprietor) for any person or entity engaged in the business then engaged in by the Company.

(b) It is the desire and intent of the parties that the provisions of this Section 8 shall be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which enforcement is sought. Accordingly, if any particular portion of this Section 8 shall be adjudicated to be invalid or unenforceable, this Section 8 shall be deemed amended to delete therefrom the portion thus adjudicated to

be invalid or unenforceable, such deletion to apply only with respect to the operation of this Section in the particular jurisdiction in which such adjudication is made.

(c) Nothing in this Section 8 shall reduce or abrogate the Employee's obligations during the term of this Agreement under Sections 4 and 5 hereof.

9. **REMEDIES.** If there is a breach or threatened breach of the provisions of Section 5, 6, 7 or 8 of this Agreement, the Company shall be entitled to an injunction restraining the Employee from such breach. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies for such breach or threatened breach.

10. **ASSIGNMENT.** This Agreement may not be assigned by any party hereto; provided that the Company may assign this Agreement in connection with a merger or consolidation involving the Company or a sale of substantially all its assets to the surviving corporation or purchaser as the case may be, so long as such assignee assumes the Company's obligations thereunder.

11. **NOTICES.** Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and sent by registered mail to the Employee at his residence at _53 Stowell Rd. Bedford, NH 03110_ or to the Company at its address set forth above.

12. **WAIVER OF BREACH.** A waiver by the Company or the Employee of a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach by the other party.

13. **ENTIRE AGREEMENT.** This instrument contains the entire agreement of the parties. It may be changed only by an agreement in writing signed by a party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first hereinabove written.

**EMPLOYEE**

DATED: April 1, 2003   _/s/ John L. Stenson_

**LIGHTHOUSE FINANCIAL SERVICES, INC.**
40 Church Street Suite 301
Lowell, MA 01852

DATED: 4-1-, 2003   By: _/s/ V.S. Dennen_

Its: ~~President~~ CEO

G:\JD\MStenton (Lighthouse)\Corporate Documents\Employment Agreement.doc